UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS G. WHITTIE,

    Plaintiff,

v.

    Case No. 14-10070

    Hon. John Corbett O'Meara

CITY OF RIVER ROUGE and
JEFFREY HARRIS, individually and
in his official capacity, and jointly
and severally,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' motion for summary judgment, filed April 20, 2015, which has been fully briefed. The court heard oral argument and took the matter under advisement on July 30, 2015. For the reasons explained below, Defendants' motion is granted in part and denied in part.

**BACKGROUND FACTS**

Plaintiff Dennis Whittie is employed by Defendant City of River Rouge as a part-time police officer. Defendant Jeffrey Harris was employed by the city as its Chief of Police and Fire. Whittie alleges that Defendants retaliated against him in violation of his First Amendment rights and the Michigan Whistleblowers'

Protection Act by changing his shift and by failing to hire him as a full-time officer. Whittie contends that these actions were taken because he complained to MIOSHA about the lack of standard operating procedures for fire suppression and about the lack of policies and other issues related to exposure to blood-borne pathogens.

Whittie began working for the City of River Rouge as a non-union, part-time police officer in 2007 and continues to work in that capacity. Whittie also began attending law school full time in 2013. In February 2013, Whittie sent an email to his supervisors regarding the need to order rubber gloves in bulk to avoid running out. Whittie contends that, despite this email, problems with the lack of rubber gloves continued.

On April 6, 2013, Whittie was exposed to a prisoner's blood and contends that the lack of rubber gloves and the city's lack of policy to address such exposure "exacerbated" the problem. (Defendants claim that gloves were available.) Whittie contends that he filed a MIOSHA complaint regarding the lack of blood-borne pathogen policy, training, and equipment.

On April 29, 2013, Whittie filed an anonymous MIOSHA complaint. The complaint did not mention blood-borne pathogens, but stated: "The City of River Rouge currently operates a Police and Fire Department Public Safety service with

no Stand [sic] Operating Procures and/or Standard Operating Guild [sic] in place. The lack of these articles does place PSO employees in an unsafe/hazardous environment. The Department refuses to give an [sic] put in place policy and tells its employees 'We are going to Wing it for now." Def.'s Ex. M.

MIOSHA informed the city of the complaint on May 6, 2013. Def.'s Ex. N. The city responded to the complaint and MIOSHA regarded the response to be satisfactory. Def.'s Ex. O. Although the MIOSHA complaint was anonymous, there is evidence in the record that Harris knew of Whittie's complaints. See Vanderaa Dep. at 46; Lopez Dep. at 60-61.

Whittie contends that, after his MIOSHA complaint, Defendant Harris assigned him to a different shift and, from May 2013 through December 2013, Harris refused to accommodate Whittie's law school schedule as had been done in the past.

In May 2013, Harris held a staff meeting, which became heated. Harris said, "oh ya, how many officers have been disciplined in the last three months if I'm so bad?" Whittie said, "Me, chief, it was a verbal from Sgt. Vanderaa." Harris allegedly responded, "ya, well you got more coming!" Whittie contends that, after the meeting, Harris spoke about officers making complaints outside of River Rouge and trying to make him look bad.

Whittie contends that in September 2013, he told "others including in front of the City's Mayor that Harris was intoxicated while on-duty at the Rouge Days Festival." Harris admits that he was in the beer tent, but denies that he was on duty or intoxicated. Whittie contends that Harris continued to assign him to the day shift, which conflicted with his law school schedule.

Sometime after the Rouge Days Festival, Whittie contends that he had a discussion with Harris regarding the lack of policies in the department. According to Whittie, Harris told him that he was "retiring in 1 year and a couple of months" and that Whittie could "bitch to whoever you want" about the lack of policies. Harris also said that Whittie's reports to the "State" did not do anything for him.

In October 2013, all part-time officers, including Whittie, were interviewed for a new full-time officer position. The interviews were conducted by Sergeants Vanderaa, Dotson, and Lozon, with input from Lieutenants Lopez and Price. Harris sat in on the interviews. Ultimately, Harris made a recommendation to the public safety commission. Harris Dep. I at 105; Harris Dep. II at 12. Whittie was not chosen for the position and claims that he is better qualified than the successful candidate, Richard Morofski.

Whittie filed this action on January 7, 2014, alleging retaliation in violation of the First Amendment and the Whistleblowers' Protection Act. Defendants seek

summary judgment on both of Whittie's claims.

## LAW AND ANALYSIS

### I.  Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II.  First Amendment Retaliation

Whittie contends that he was retaliated against for making his complaints in violation of the First Amendment.   For a public employee to establish a claim for First Amendment retaliation, he must demonstrate:

> (1) that he was engaged in constitutionally protected activity; (2) that the defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of his constitutional rights.

Leary v. Daeschner, 228 F.3d 729, 737 (6th Cir. 2000).  To show that he engaged in

constitutionally protected speech, Whittie must show that his speech touched on matters of public concern and the his "interest in commenting upon matters of public concern . . . outweigh[s] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. If the plaintiff can establish the three elements outlined above, the burden of persuasion then shifts to the defendants, who must show, by a preponderance of the evidence, that they "would have taken the same action even in the absence of the protected conduct." Id. at 737.

Defendants contend that Whittie did not engage in protected speech, did not suffer an adverse employment action, and that there is no causal connection between his speech and the allegedly adverse actions.

To be constitutionally protected, Whittie's speech must have touched on a matter of public concern. Matters of public concern are matters of "political, social, or other concern to the community," as opposed to matters "only of personal interest." See Cockrel v. Shelby Cty. Sch. Dist., 270 F.3d 1036, 1052 (6th Cir. 2002). "In general, speech involves matters of public concern when it involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" Banks v. Wolfe Cty. Bd. of Ed., 330 F.3d 888, 893 (6th Cir. 2003)

("Public interest 'is near its zenith when ensuring that public organizations are being operated in accordance with the law.'").

Whittie's speech, most obviously the MIOSHA complaint, touches on matters of public concern. The MIOSHA complaint addresses the lack of standard operating procedures for fire suppression, which are required by state regulation. MIOSHA Administrative Rule 408.17451. "When an institution oversees some aspect of public safety, the correct operation of that institution is a matter of public concern." Hoover v. Radabaugh, 307 F.3d 460, 466 (6th Cir. 2002).

As a result of Defendants' adverse actions, Whittie has alleged an injury "that would likely chill a person of ordinary firmness from continuing to engage in" protected activity. See Bell v. Johnson, 308 F.3d 594, 603-604 (6th Cir. 2002). Although Defendants acknowledge that the failure to promote Whittie constitutes a sufficient adverse action, they suggest that the shift change does not. To the contrary, Whittie need not show an "adverse employment action" of the level required in an employment discrimination case. Rather, the injury must "chill a person of ordinary firmness." Id. Further, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." Bell, 308 F.3d at 603. In this case, Defendants accommodated Plaintiff's school schedule by assigning him to the midnight shift for approximately two years. After his

complaints, Defendants assigned him to the day shift, which caused him to be unable to work as many hours as he had previously, with a loss in pay. This concrete injury is more than "inconsequential" and sufficient to survive summary judgment.

Whittie has also established a causal connection between his protected activity and Defendants' adverse actions. Viewing the record most favorably to Plaintiff, Harris knew of Plaintiff's complaints and reacted with hostility. Soon after Plaintiff complained, Harris changed his shift.[1] Other officers testified that they did not know of any reason why Plaintiff's schedule could not be accommodated. Defendants do not have an explanation for failing to accommodate Plaintiff's schedule, as had been done previously, other than that officers often changed shifts.[2] "An act taken in retaliation for the exercise of a constitutionally protected right is actionable even if the action would have been

---

[1] Defendants maintain that the May 2013 shift schedule was completed before Plaintiff's MIOSHA complaint was received by Defendants. Plaintiff complained internally before the MIOSHA complaint was filed; further, the shift schedule was completed on a monthly basis. Defendants continued to assign Plaintiff to the day shift for months, despite his request to accommodate his school schedule. Whether the shift change was the result of a retaliatory motive is for the trier of fact.

[2] Defendants argue that they are not required to accommodate Plaintiff's school schedule. The court agrees with this general proposition and does not hold that employers are required to do so. Under the circumstances of this case, however, Defendants' failure to do so raises an inference of retaliation.

proper if taken for a different reason." Hoover, 307 F.3d at 467.

Whittie also was not hired for the full-time officer position. Whittie contends that he was objectively more qualified than the successful candidate; and Defendants do not attempt to dispute this or explain why Whittie did not receive the promotion. Defendants simply state that none of the officers on the interview panel selected Whittie as their first choice. There is no contemporaneous record of the interview process. Rather, after this suit was filed, Harris asked the interview panel to rank the candidates in an email. According to Whittie, Lt. Deborah Price told him that although she was asked for her input into the hiring decision, "Jeff [Harris] and his boys made that decision way before he asked me." Decl. of D. Whittie at ¶35.

Viewing the record in the light most favorable to Plaintiff, a reasonable jury could find that Harris retaliated against Whittie as a result of his complaints by refusing to accommodate his schedule and by not hiring him as a full-time officer. Defendants have not demonstrated that the shift change and hiring decision would have been made in the absence of Whittie's protected conduct. See Cockrel, 270 F.3d at 1056-57.

### A. **Qualified Immunity**

Defendants argue that Harris is entitled to qualified immunity. See Harlow

v. Fitzgerald, 457 U.S. 800, 818 (1982) ("Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). The court analyzes qualified immunity pursuant to a two part test: "[i]f a plaintiff's facts make out a constitutional violation, the court must then proceed to determine whether or not that right was clearly established." Hoover, 307 F.3d at 467. "A right is clearly established if a reasonable official would understand that what he is doing violates that right." Id. at 468.

As discussed above, viewing the facts in the light most favorable to Whittie, he has demonstrated a First Amendment violation. Further, the right to be free of First Amendment retaliation is clearly established. See Hoover, 307 F.3d at 469 ("We agree with the district court that, as a matter of pure law, the rights here are clearly established: a reasonable official would know that terminating an employee with the motivation, even in part, of quieting the plaintiff's public speech about the illegal activities of the Department violates the Constitution."). Accordingly, Harris is not entitled to qualified immunity.

    **B.**     **Municipal Liability**

Defendants also argue that Plaintiff cannot establish the liability of the City

of River Rouge. To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005).

Plaintiff argues that the adverse actions taken against him were taken by officials with final decision-making authority: Chief Harris (shift change) and the city's public safety commission (failure to promote). Defendants do not dispute this or explain why the City should be absolved of liability. See Meyers v. City of Cincinnati, 14 F.3d 1115, 1117-18 (6th Cir. 1994) ("If the decision to punish him for exercising his constitutional rights was made by the 'government's authorized decisionmakers' the City is responsible.").

## III. Whistleblowers' Protection Act

The analysis under the Whistleblowers' Protection Act is similar to that of Plaintiff's First Amendment claim. See West v. General Motors Corp., 469 Mich. 177, 183-84 (2003) (a plaintiff must show protected activity, adverse action, and a

causal connection). See also M.C.L. 15.362.

As Defendants point out, however, the statute of limitations on a WPA claim is 90 days. M.C.L. 15.363(1). Plaintiff filed this action on January 7, 2014. Plaintiff was notified that he was not hired for the full-time position on October 7, 2013. Ninety days from October 7, 2013, is January 5, 2014. Plaintiff's failure to hire/promote claim and the shift changes from May 2013 through October 2013 are barred by the statute of limitations.

The adverse actions (shift changes) that occurred in November 2013 and December 2013 are not barred by the statute of limitations. However, given the likelihood of jury confusion regarding this piece of Plaintiff's WPA claim and his partially overlapping First Amendment claim, the court will decline to exercise supplemental jurisdiction over Plaintiff's remaining WPA claim. See 28 U.S.C. § 1367(c); United Mine Workers v. Gibbs, 383 U.S. 715 (1966); Padilla v. City of Saginaw, 867 F. Supp. 1309 (E.D. Mich. 1994); Sanford v. Detroit Pub. Schs., 2014 WL 1922722 (E.D. Mich. 2014) ("Mixing federal-law claims with supplemental state-law claims can cause procedural and substantive problems; in the interest of judicial economy and convenience, these problems should be avoided.").

## **ORDER**

IT IS HEREBY ORDERED that Defendants' April 20, 2015 motion for summary judgment is GRANTED IN PART with respect to Plaintiff's WPA claim and DENIED IN PART with respect to Plaintiff's First Amendment claim.

                                            s/John Corbett O'Meara
                                            United States District Judge

Date:  August 18, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, August 18, 2015, using the ECF system.

                                              s/William Barkholz
                                              Case Manager