UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS G. WHITTIE,

     Plaintiff,

                                      Case No. 14-10070

v.

                                      Hon. John Corbett O'Meara

CITY OF RIVER ROUGE, *et al.*,

     Defendants.

_____/

## OPINION AND ORDER

Before the court are Plaintiff's motion for partial summary judgment and

Defendants' motion for summary judgment.  The court heard oral argument on

August 24, 2017, and took the matter under advisement.

## PROCEDURAL HISTORY

In this consolidated case, Plaintiff Dennis Whittie filed his original

complaint in 2014.  Whittie was employed as a part-time police officer for the City

of River Rouge.  In the original complaint, Whittie alleged that Defendants

retaliated against him in violation of his First Amendment rights and the Michigan

Whistleblowers' Protection Act by changing his shift and by failing to hire him as

a full-time officer.  Defendants sought summary judgment, which the court denied

with respect to Plaintiff's First Amendment retaliation claim.  The court declined

to exercise supplemental jurisdiction over Plaintiff's Whistleblowers' Protection Act claim.

Subsequently, Whittie was terminated from his employment by the City. Whittie filed a second complaint, which was later amended, alleging that his termination violated his due process and First Amendment rights and constituted a breach of the City's Charter. The cases were consolidated. Whittie seeks summary judgment on his due process and breach of contract claims; Defendants seek summary judgment on all of Plaintiff's claims.

## BACKGROUND FACTS

Whittie was hired by the City of River Rouge in 2008 as a part-time police officer. The City and the police officers' union agreed to the creation of part-time police officer positions as a result of financial challenges facing the City. The City contends that it intended these part-time police officers to be at-will employees. The part-time police officer positions were created pursuant to a Letter of Agreement between the union and the City, which provides:

> POLC Unit I agrees to allow the City to facilitate the Use of Part Time Officers. . . . The POLC Unit I understands that the City is having financial problems and is willing to allow the City to contract out One, (1) DEA position on a temporary basis. This position will be considered an at will position. The person filling this position will be an at will employees [sic], and will never make a wage more than that of a Three Year Patrolman's Base Wage

of $47,396.47, at the signing of this agreement.

Pl.'s Ex. 7 (Letter of Agreement). At the time of his hiring, Whittie signed an oath of office, which provides:

> By offering this oath of office and requiring a signature, no written or implied contract for employment or continued employment is being offered. For any reason that an employee is found to be incapable, unqualified or unfit for employment or continued employment, or the employee's best efforts to comply with the required obligations, responsibilities, duties and task performances associated with this oath are unsatisfactory, that employee is subject to removal.

Def.'s Ex. 4. As a part-time officer, Plaintiff was not a member of the union, which represents full-time police officers.

After Plaintiff filed his original lawsuit in 2014, Defendant Police Chief Jeffrey Harris retired in January 2015. Defendant Deborah Price became the chief of the City's police department. Plaintiff contends that he and Price had a good working relationship for several years, but that Price became increasingly hostile toward him as he raised various problems in the department.

In April 2015, Plaintiff posted at the police station a photograph with superimposed comments (a "meme") of a sergeant sleeping in his police vehicle while on duty. When Price raised the issue at a staff meeting, Plaintiff admitted posting the photo. Later, Price told Plaintiff to "stop playing like that." Plaintiff

states that Price did not indicate that he would disciplined. Price, however, testified that she considered this issue "the straw that broke the camel's back." Def.'s Ex. 7, Price Dep. at 134. According to Price, Plaintiff was "being insubordinate, usurping my authority, creating divisiveness, not being courteous to his fellow officers, creating dissention among the troops." Id. at 154.

In mid-April 2015, the City received notice from MIOSHA about a complaint Plaintiff had made regarding the police department's handling of safety related to blood-borne pathogens. For the police department's violations, MIOSHA imposed a $2,800 fine.

Plaintiff alleges that around the same time, Price's secretary and a lieutenant began printing up police reports related to citizen complaints about Plaintiff, some of which were five years old, "for no good reason."

After the "meme" incident, the City hired attorney James Acho to investigate Plaintiff. Acho testified that, after interviewing the majority of the officers in the department, the general sentiment was that Plaintiff was a "cancer in the department" because of his "undermining nature and a desire to supersede those who oversee him." Acho Dep. at 19.

In May 2015, Plaintiff met with Price to express his concerns about various incidents: civil rights violations of one of his fellow officers, ongoing LIEN

violations in the department, racist rants on Facebook by an officer, the unlawful

release of a prisoner, wage and hour violations, and that an officer allegedly

received sexual favors in exchange for not making an arrest.  See Pl.'s Ex. 3 at ¶

78; Defs.' Ex. 28.  Plaintiff contends that "Price's reactions at the meeting were

negative toward me." Pl.'s Ex. 3 at ¶ 80.

Plaintiff went on workers' compensation leave due to a back injury on June

22, 2015.  Having graduated from law school in January 2015, Plaintiff formed a

law firm called the Whittie Law Center in June 2015.  While on workers'

compensation leave, Plaintiff represented clients as a practicing attorney.

During Plaintiff's medical leave, the City hired Lance Owens, who had

worked as a part-time police officer, as a full-time officer.  Defendants contend that

Owens was hired as a full-time officer because he received another offer of

employment and the City wanted to retain him.  See Def.'s Ex. 37.

After Plaintiff returned from leave in February 2016, he was presented with

a letter from Price notifying him that "your actions have been found to be in

violation of your responsibilities as an employee of the City of River Rouge."

Defs.' Ex. 12.  "Your decision to reproduce a photograph of a fellow officer in a

compromised position and disseminate this image, utilize your own letterhead

despite being directed to refrain from such use, and your decision to engage in

unauthorized outside employment all constitute violations of your responsibilities as a City of River Rouge Police Officer." Id.  Price informed Plaintiff that he would have an opportunity to respond to the charges set forth in the letter at a hearing scheduled for February 22, 2016.

At the hearing, Plaintiff stated that he received the letter outlining the charges against him, but that he was "at a loss to even properly respond yet because there's just a laundry list of charges but no application. . . . [N]o analysis." Defs.' Ex. 17 at 1.  The City's attorney told Plaintiff, "this is your opportunity to respond to these charges." Id.  Plaintiff asked numerous questions about the charges and stated that he felt he was singled out for discipline and retaliated against.  Subsequently, Plaintiff also responded to the charges in writing, reiterating that he disagreed that the charges warranted his termination and felt that they were retaliatory.  Pl.'s Ex. 37.

On March 2, 2016, Price sent Plaintiff a letter indicating that the charges against him had been sustained and that she was recommending his termination. Defs.' Ex. 19.  She denied his claim of retaliation and stated that "the City rejects your defense of: I did engage in these actions, but I should not be disciplined for it." Id.  Price also informed Plaintiff, "[t]hough not required you are permitted to have this termination reviewed by a Trial Board of the City of River Rouge Public

Safety Commission." <u>Id.</u>

By letter dated March 5, 2016, Plaintiff responded that "I fully expect that you and the City of River Rouge will follow the River Rouge City Charter, including Section 163." Section 163 of the City of River Rouge Charter provides as follows:

> No member of the fire or police department shall be demoted or dismissed, and no member of either force, except the probationary members shall be dismissed except upon formal verified complaint and after trial and conviction by the commission of public safety sitting as a trial board. Said persons so charged shall be furnished with a copy of the complaint together with a notice of the time and place of the hearing thereon, and may have the benefit of legal counsel to represent him if he so desires. After trial and conviction, punishment shall be fixed by the commission of public safety and a copy of its findings filed with the city clerk.

Def.'s Ex. 5.

On March 24, 2016, the City of River Rouge Public Safety Commission conducted a hearing to review Plaintiff's termination. <u>See</u> Defs.' Ex. 21 (hearing transcript). At the conclusion of the hearing, the Public Safety Commission voted unanimously to support Price's decision to terminate Plaintiff.

Plaintiff contends that, based upon the termination procedure set forth in the Charter, he had a property interest in his employment and he could not be deprived of that property interest without due process. Plaintiff also contends that the City's

failure to follow the termination procedure set forth in the Charter constitutes a breach of contract. Plaintiff argues that his termination was based upon various complaints he made about violations of law inside the department, in violation of his rights under the First Amendment and Whistleblowers' Protection Act. Defendants maintain that Plaintiff was terminated as a result of insubordination and other inappropriate behavior.

## LAW AND ANALYSIS

### I.    Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II.    Due Process

The Due Process Clause of the Fourteenth Amendment to the United States

Constitution "provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).  When analyzing a due process claim, the court first considers "whether the plaintiff has a property interest entitled to due process protection." Mitchell v. Frankhauser, 375 F.3d 477, 480 (6th Cir. 2004).   If the plaintiff has a protected property interest, the court "must then determine what process is due." Id.

Whether Plaintiff has a protected property interest in his police officer position depends upon state law.  Bailey v. Floyd Cty. Bd. of Educ., 106 F.3d 135, 141 (6th Cir. 1997).  To establish a property interest, he must "point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." Id.  A property interest may be created by a state statute, formal contract (such as a collective bargaining agreement), or "a contract implied from the circumstances."  Singfield v. Akron Metro. Housing Auth., 389 F.3d 555, 565 (6th Cir. 2004).  An at-will employee does not have a protected property interest in continued employment.  Waters v. Churchill, 511 U.S. 661, 679 (1994).

Under Michigan law, "when an employment agreement is silent regarding the type of employment relationship, at will employment, not just-cause

employment, is presumed." <u>Mannix v. County of Monroe</u>, 348 F.3d 526, 532 (6th Cir. 2003) (citation omitted). A just-cause relationship may arise "either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." <u>Id.</u> (quoting <u>Toussaint v. Blue Cross & Blue Shield of Mich.</u>, 408 Mich. 579 (1980)).

Plaintiff contends that he had a just-cause employment relationship with the City based upon an express contract theory.[1] "To overcome the presumption of employment at will, a party must present sufficient proof either of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause." <u>Rood v. Gen. Dynamics Corp.</u>, 444 Mich. 107, 117 (1993). In support of his express contract theory, Plaintiff points to the City Charter, which provides that no member of the police force "shall be dismissed except upon formal verified complaint and after trial and conviction by the commission of public safety sitting as a trial board." Although the Charter does not expressly provide just-cause protection, Plaintiff argues that this trial procedure implies a

_____

[1] Defendants argue that Plaintiff was an at-will employee, based upon the Letter of Agreement between the union and City that allowed for the hiring of part-time officers. The Letter of Agreement, however, specifically designates "One, (1) DEA position" as being "at-will." The Letter of Agreement cannot be read to designate part-time police officers as "at-will."

just-cause standard.[2]  See Elmore v. Police Comm'r of the City of Detroit, 92

Mich. App. 382, 385 (1979).  In Elmore, the Michigan Court of Appeals concluded

that similar language – providing an officer the "opportunity of being heard in his

defense"– implied that "cause" must be established. Id.  The Elmore court did not

cite any authority for this proposition, however.

More recent case law indicates that a termination *procedure* (such as binding

arbitration) does not create a just-cause standard.  See Samples v. Botsford Gen.

Hosp., 2007 WL 1610439 at *3 (Mich. App. June 5, 2007) ("[T]he adoption of a

binding arbitration policy does not convert at-will employment into just-cause.");

Mannix, 348 F.3d at 535 ("Neither the adoption of systematic procedures for

dealing with employees nor the creation of disciplinary guidelines transforms an

at-will relationship into one prohibiting discharge except for just-cause."); Biggs v.

Hilton Hotel Corp., 194 Mich. App. 239, 241-42 (1992) ("The fact that defendant

had established a disciplinary system for its employees and, apparently, obligated

plaintiff to abide by that disciplinary system in dealing with his subordinates does

not establish unequivocally plaintiff's position that he was a just-cause employee

rather than an at-will employee."); Willoughby v. Vill. of Dexter, 709 F. Supp.

---

[2] In contrast, the City expressly agreed to just-cause protection for officers covered
by the collective bargaining agreement.  See Defs.' Ex. 22 (CBA).

781, 784 & n.1 (E.D. Mich. 1989) ("Although the ordinance provides for a specific termination procedure, which the council followed, there is no language stating that the council may only remove the manager for good cause.").

The court concludes that although the City Charter provides for a procedure to be followed in the event of termination, it does not create a contractual or other legal entitlement to just-cause employment. Moreover, the oath of office signed by Plaintiff provides that "no written or implied contract for employment or continued employment is being offered. For any reason that an employee is found to be incapable, unqualified or unfit for employment or continued employment, or the employee's best efforts to comply with the required obligations, responsibilities, duties and task performances associated with this oath are unsatisfactory, that employee is subject to removal." At most, this language creates a "satisfaction contract," which is "not a just-cause or good-cause contract." Meagher v. Wayne State Univ., 222 Mich. App. 700, 722-23 (1997) (under a satisfaction contract "[t]he employer is the sole judge of whether the person's job performance is satisfactory."). Such language is insufficient to create a just-cause contract or a legitimate expectation of a just-cause standard. Absent just-cause protection, Plaintiff does not have a property interest in his employment and his due process claim cannot be sustained. The court will grant summary judgment in favor of

Defendants on this claim.

## III.    <u>Breach of Contract</u>

Plaintiff also asserts a breach of contract claim, contending that he was legally entitled to the termination procedure set forth in the City Charter, which states that "no member" of the police department "shall be dismissed except upon formal verified complaint and after trial and conviction by the commission of public safety sitting as a trial board.  Said persons so charged shall be furnished with a copy of the complaint together with a notice of the time and place of the hearing thereon, and may have the benefit of legal counsel to represent him if he so desires.  After trial and conviction, punishment shall be fixed by the commission of public safety and a copy of its findings filed with the city clerk."

Defendants do not dispute that this specific procedure was not followed, nor have they persuasively explained why this procedure does not apply to Plaintiff, who was clearly a "member" of the police department.  Accordingly, the court will grant summary judgment in favor of Plaintiff on his breach of contract claim, to the extent he seeks the benefit of the procedure set forth in the Charter.  To the extent Plaintiff bases his breach of contract claim on a just-cause termination standard, the court denies Plaintiff's motion for summary judgment and grants Defendants' motion, for the reasons explained above.

**IV.** **First Amendment**

Plaintiff also claims that he was discharged in retaliation for exercising his First Amendment rights. Prior to his termination, he allegedly reported the following incidents to Defendant Police Chief Deborah Price: (1) alleged LEIN violations by the department; (2) racist rants by follow City police officers on social media; (3) an alleged unlawful release of a prisoner; (4) wage and hour violations; and (5) a sergeant receiving oral sex in exchange for not making an arrest/issuing a citation.

A public employee alleging First Amendment retaliation must establish that (1) he engaged in protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from engaging in such conduct; and (3) the adverse action was motivated at least in part by the protected conduct. Handy-Clay v. City of Memphis, Tennessee, 695 F.3d 531, 539 (6th Cir. 2012). "If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." Boulton v. Swanson, 795 F.3d 526, 531 (6th Cir. 2015) (citation omitted).

**A.** **Protected Conduct**

To show protected conduct in the First Amendment context, the employee

must establish three elements:  first, the employee must speak about "matters of public concern," second, his "must speak as a private citizen and not as an employee pursuant to his official duties," and third, the employee must show that his speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Mayhew v. Town of Smyrna, Tennessee, 856 F.3d 456, 462 (6ᵗʰ Cir. 2017).

Defendants argue that Plaintiff did not engage in protected conduct, because he was not speaking as a citizen, but pursuant to his official duties.[3]  See Garcetti v. Ceballos, 547 U.S. 410 (2006).  Defendants maintain that Plaintiff's speech was not protected because it "owes its existence" to his responsibilities as a police officer.  According to Defendants, Plaintiff complained "up his chain of command" about matters "directly related to his duties as a police officer."  See Docket No. 76 at 28-29.

As made clear by the Supreme Court in Lane v. Franks, 134 S.Ct. 2369 (2014), Defendants misapprehend the private citizen/employee test.  An employee's speech pursuant to his official duties does not "simply relate[] to public employment or concern[] information learned in the course of public employment."

---

[3] The court declines Defendants' untimely invitation to reconsider its 2015 ruling regarding Plaintiff's original First Amendment claim.

Lane v. Franks, 134 S.Ct. 2369, 2379 (2014).  Rather, "the critical question . . . is whether the speech at issue is *itself ordinarily within the scope of an employee's duties*, not whether it merely concerns those duties."  Id. at 2379 (emphasis added).  See Boulton, 795 F.3d at 534 ("After *Lane* . . . . the phrase 'owes its existence to a public employee's professional responsibilities' must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his employment.").

Although Defendants make the conclusory argument that Plaintiff's speech was "directly related" to his duties as a police officer, they do not address the "critical question" of whether Plaintiff's speech was "itself ordinarily within the scope" of his duties.  For example, Defendants do not address whether it was part of Plaintiff's ordinary job responsibilities to report wrongdoing by other employees or suspected civil rights or wage and hour violations in the department.  Cf. Mayhew, 856 F.3d at 464-66, 469 (lab supervisor's speech about water samples was within the scope of his duties, but his speech about the city failing to follow its own hiring polices was not).  Plaintiff contends that his speech was not within the scope of his job duties, and Defendants do not rebut this argument.  Accordingly, Defendants' unsupported argument that Plaintiff was not speaking as a "citizen" fails.

**B.     Casual Connection**

Defendants argue that Plaintiff cannot establish a causal connection between his speech and the decision to terminate his employment.  "In order to establish a causal connection between the protected conduct and the adverse action, plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the demotion would not have occurred but for his engagement in protected activity.  A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation."  Eckerman v. Tennessee Dep't of Safety, 636 F.3d 202, 209 (6th Cir. 2010).  Contrary to Defendants' argument,  Plaintiff need not show that his termination was *solely* motivated by his protected speech.[4]  Rather, Plaintiff must show that the adverse action was "motivated at least in part" by the protected conduct.  See, e.g., Boulton, 795 F.3d at 530; Handy-Clay, 695 F.3d at 545; Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977) (plaintiff must show protected conduct was a "substantial" or "motivating" factor).

Plaintiff has alleged that he and Chief Price had a harmonious working

---

[4] The case Defendants cite for this proposition is inapposite; it addresses the standard for awarding attorney fee sanctions, not First Amendment retaliation causation. See Goodyear Tire & Rubber Co. v. Haeger, 137 S.Ct. 1178, 1184 (2017).

relationship, which changed after his protected speech. Plaintiff also contends that the reasons given for his termination were pretextual. For example, Plaintiff asserts that Price knew about his use of personal letterhead and his outside employment, but that these issues only became the basis for discipline after he engaged in protected speech. See Whittie Dec. at ¶¶ 64-80. Plaintiff also contends that although Price told him to "stop playing like that" after the "meme" incident, she gave no indication that he would be disciplined until after his protected activity. These factual allegations, coupled with Price's "negative" attitude toward Plaintiff's reports of wrongdoing within the department, raise an inference that Plaintiff's termination was motivated at least in part by his protected speech. Plaintiff has alleged sufficient facts in this regard to establish a causal connection, satisfying the elements necessary for a prima facie case.[5]

One an employee establishes a prima facie case, "the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." Boulton, 795 F.3d at 531. "Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the

---

[5] The parties do not dispute that Plaintiff suffered an adverse action: his termination and the decision to hire/promote Owens as a full-time officer.

plaintiff, no reasonable juror could fail to return a verdict for the defendant."

Given the factual dispute regarding the motivation behind Plaintiff's termination, Defendant has not met this standard and summary judgment on this portion of Plaintiff's First Amendment claim is inappropriate. See Handy-Clay, 695 F.3d at 545 (A "defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury.").

With respect to his failure to hire/promote claim, however, Plaintiff has failed to make a causal connection. While Plaintiff was on medical leave in October 2015, the City offered part-time officer Lance Owens a full-time position. Defendants contend that the City did so because Owens had been offered a full-time officer position in another community and it did not want to lose him. The full-time position was essentially created for Owens. Plaintiff has not shown that his protected conduct was a factor in Owens receiving the position instead of him. Moreover, Defendants have demonstrated that Owens would have been hired/promoted absent Plaintiff's protected conduct. Accordingly, the court will grant summary judgment in favor of Defendants with respect to Plaintiff's failure to hire/promote claim.

## C.     **Qualified Immunity**

In light of the factual dispute regarding the motivation for Plaintiff's

termination, Price is not entitled to qualified immunity. <u>See</u> <u>generally</u> <u>Harlow v.</u>
<u>Fitzgerald</u>, 457 U.S. 800, 818 (1982) ("Government officials performing
discretionary functions generally are shielded from liability for civil damages
insofar as their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known."). The court
analyzes qualified immunity pursuant to a two part test: "[i]f a plaintiff's facts
make out a constitutional violation, the court must then proceed to determine
whether or not that right was clearly established." <u>Hoover</u>, 307 F.3d at 467. "A
right is clearly established if a reasonable official would understand that what he is
doing violates that right." <u>Id.</u> at 468.

    As discussed above, viewing the facts in the light most favorable to Plaintiff,
he has alleged sufficient facts to demonstrate a First Amendment violation.
Further, the right to be free of First Amendment retaliation is clearly established.
<u>See</u> <u>Hoover</u>, 307 F.3d at 469 ("We agree with the district court that, as a matter of
pure law, the rights here are clearly established: a reasonable official would know
that terminating an employee with the motivation, even in part, of quieting the
plaintiff's public speech about the illegal activities of the Department violates the
Constitution."). Therefore, Price is not entitled to qualified immunity.

## V.    Municipal Liability

Defendants also argue that Plaintiff cannot establish liability against the City of River Rouge.  In order to establish municipal liability under § 1983, a plaintiff must point to a municipal policy or custom that is behind the constitutional violation.  See Monell v. Dept. of Social Servs. of the City of New York, 436 U.S. 658, 690 (1978).  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  Meyers v. City of Cincinnati, 14 F.3d 1115, 1117 (6th Cir. 1994) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986)).

The City of River Rouge Public Safety Commission has "sole management and control" over the police department pursuant to the City Charter.  See Charter at § 158.  Defendants do not dispute that the Public Safety Commission acted as the final policymaker for the City when it approved Plaintiff's termination.  See Meyers, 14 F.3d at 1118 ("The Commission's review does not preclude liability; on the contrary, the Commission's denial of Meyers' appeal is the ultimate source of liability in this case.").  Defendants have not established that summary judgment is appropriate with respect to Plaintiff's municipal liability claim.

## VI.    **Whistleblowers' Protection Act**

Plaintiff also asserts a Michigan Whistleblowers' Protection Act ("WPA")

claim, which requires an analysis similar to that of the First Amendment claim. See

West v. General Motors Corp., 469 Mich. 177, 183-84 (2003) (a plaintiff must

show protected activity, adverse action, and a causal connection).  See also M.C.L.

15.362.  However, consistent with the court's decision in Plaintiff's original case,

which noted that WPA and First Amendment claims overlap, the court will decline

to exercise supplemental jurisdiction over Plaintiff's WPA claim so as to avoid

jury confusion.  See 28 U.S.C. § 1367(c); United Mine Workers v. Gibbs, 383 U.S.

715 (1966); Padilla v. City of Saginaw, 867 F. Supp. 1309 (E.D. Mich. 1994);

Sanford v. Detroit Pub. Schs., 2014 WL 1922722 (E.D. Mich. 2014) ("Mixing

federal-law claims with supplemental state-law claims can cause procedural and

substantive problems; in the interest of judicial economy and convenience, these

problems should be avoided.").

## **ORDER**

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is

GRANTED IN PART and DENIED IN PART, consistent with this opinion and

order.

IT IS FURTHER ORDERED that Defendants' motion for summary

judgment is GRANTED IN PART and DENIED IN PART, consistent with this

opinion and order.

s/John Corbett O'Meara
United States District Judge
Date: September 12, 2017




I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 12, 2017, using the ECF system.


s/William Barkholz
Case Manager